ORIGINAL

AO 91 (Rev. 11/82)

# CRIMINAL COMPLAINT

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>SAM TRULY FLEMING | DOCKET NO.<br><br>MAGISTRATE'S CASE NO.<br>17MJ01207 |

Complaint for violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(B)(iii)

| NAME OF MAGISTRATE JUDGE<br>HONORABLE PATRICK J. WALSH | UNITED STATES<br>MAGISTRATE JUDGE | LOCATION<br>Los Angeles, California |
|---|---|---|

| DATE OF OFFENSE<br>April 3, 2017 | PLACE OF OFFENSE<br>Los Angeles County | ADDRESS OF ACCUSED (IF KNOWN) |
|---|---|---|

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii)]

On or about April 3, 2017, in Los Angeles County, within the Central District of California, defendant SAM TRULY FLEMING knowingly possessed with intent to distribute at least 28 grams of a mixture or substance containing a detectable amount of cocaine base, a Schedule II controlled substance.

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:

(See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE: N/A

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT<br>**MIGUEL MEJIA**<br>OFFICIAL TITLE<br>Task Force Officer - ATF |
|---|---|

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE[(1)]<br>*Patrick J. Walsh* | DATE<br>May 18, 2017 |
|---|---|

[(1)] See Federal Rules of Criminal Procedure 3 and 54

SAUSA Rebecca B. Shults  x3144  REC: Detention

## AFFIDAVIT

I, Miguel Mejia, being duly sworn, declare and state as follows:

### I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint and arrest warrant for SAM TRULY FLEMING ("FLEMING") for a violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(B)(iii), possession with the intent to distribute a mixture or substance containing a detectable amount of cocaine base.

2. The facts in this affidavit are based upon my personal observations, my training and experience, and information obtained from law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all of my knowledge of, or investigation into, this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### II. PURPOSE OF AFFIDAVIT

3. I am a Deputized Task Force Officer ("TFO") with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), currently assigned to Los Angeles Field Division, Los Angeles Field Office II/Los Angeles Police Department ("LAPD") Metropolitan Division Task Force. I have been a peace officer with the LAPD for over 19 years. My mission within this Task Force, includes, but is not limited to,

reducing gang-related and violent crime, assisting in investigations, locating and apprehending persons who have committed crimes within the City of Los Angeles, and developing and utilizing proactive methods to monitor and prevent criminal activity within our communities. Additionally, I work in conjunction with several specialized units and geographical area detectives including, but not limited to, Gang and Narcotics, Narcotics Abatement Unit, 77th Detectives, Southeast Detectives, Newton Detectives, Operations-South Bureau Criminal Gang Homicide Division, California Department of Corrections, Los Angeles County Probation, Los Angeles Sheriff's Department, and Homeland Security Investigations. Before my current assignment, I was assigned to the Gang and Narcotics Division, LAPD/Federal Bureau of Investigations ("FBI") Fugitive Task Force, North Hollywood Division.

  4. I have received seven months of basic law enforcement training while attending the LAPD Academy. I have also received several specialized training blocks including the recognition, use, possession, packaging and sales of controlled substances. Additionally, I attended and successfully completed a 40-hour narcotic training program, which focused on the recognition, use, possession, packaging, and sale of controlled substances. During my time as a peace officer, I have conducted surveillances at known drug sale locations, gang locations, illegal firearms sales locations, and seen the actions and methods used by criminal street offenders in the course of

selling and buying contraband. I have also conducted and participated in hundreds of firearm related investigations.

### III. SUMMARY OF PROBABLE CAUSE

5. On April 3, 2017, LAPD Officers recognized FLEMING as they watched FLEMING conduct an apparent sale of drugs in Los Angeles. Upon verification that FLEMING was on probation and subject to search conditions, LAPD officers searched FLEMING'S car and house.

6. During the probation compliance search, LAPD officers found the following in FLEMING's car and apartment: a total of approximately $11,517; 115.2 grams of cocaine base; 4.31 grams of methamphetamine; 1.42 grams of heroin; a glass beaker with cocaine base residue; and three digital scales with white residue.

7. LAPD officers arrested FLEMING for sale of cocaine base.

### IV. STATEMENT OF PROBABLE CAUSE

8. Based on my review of LAPD arrest and evidence reports, and my conversations with other law enforcement officers, I know the following:

#### FLEMING'S APPARENT DRUG SALE

a. On April 3, 2017, LAPD Officers Munoz and Braun and Detectives Trejo and Fleming were assigned to Central Division's Narcotics Enforcement Detail and were on duty near 7th Street and San Julian Street in Lost Angeles. The officers know this area to be a frequent location for active drug sales.

b.  While driving eastbound on 7th Street at San Julian Street, Detective Trejo saw a black male, later identified as FLEMING, walking westbound from the main entrance of the Yankee Hotel on East 7th Street. Detective Trejo saw FLEMING turn north on San Julian Street, where he met with an unknown woman. Detective Trejo saw FLEMING hand the woman a small object and the woman give FLEMING money. Detectives Trejo and Fleming saw FLEMING return to the Yankee Hotel alone. Based on his training and experience, Detective Fleming recognized this behavior as a potential sale of illegal drugs.

c.  Using department resources, Detective Trejo recognized FLEMING from previous arrests for illegal drug sales, determined that FLEMING was on active formal probation with search conditions. Law enforcement databases showed FLEMING lived at 501 E. 7th Street, Apartment 416, in Los Angeles and had a grey 2016 Chevy Impala ("Impala") with California license number 7PGA438 registered to him at that address.

SEARCH OF FLEMING'S CAR AND HOUSE

d.  At approximately 5:20 p.m., Detectives Trejo and Fleming saw FLEMING driving the Impala on San Julian Street. LAPD Officer Webb, driving a marked police car, initiated a traffic stop on FLEMING to conduct a probation search of the Impala. Officers Munoz and Braun arrived on-scene within minutes to assist in the probation search. The traffic stop is recorded.

e.  The officers told FLEMING that they stopped FLEMING to conduct a probation search. FLEMING told Officer

4

Munoz that he had approximately five thousand dollars in cash on his person.

        f.    During the search, Officer Braun found a black plastic bag in the center console of the car.  The bag contained two bundles of U.S. currency.  Officer Webb found a third bundle of U.S. currency in a coin container located to the left of the steering wheel.  The money found in the Impala totaled $3,510.

        g.    At approximately 5:30 p.m., Officers Munoz and Braun, with Detective Fleming, went to FLEMING's apartment to conduct a probation search.  Upon entering the apartment, Officer Braun saw a large amount of U.S. currency on the bed.  The money on the bed totaled approximately $1,808.

        h.    During a search of the apartment, officers found a black plastic bag under a table.  The bag contained the following:

        i.    Two clear plastic bags, both of which contained multiple smaller plastic bags packaged together.  The smaller plastic bags each contained an off-white substance that Officer Munoz, based on his training and experience, recognized as cocaine base.  Officer Munoz tested the substance with a field test and the substance tested positive for cocaine;[1]

---

[1] A field test is a test conducted on scene when suspected drugs are recovered.  The test yields either a positive or negative result for the presence of a particular controlled substance.

5

    ii. A small, clear plastic bag containing a substance that Officer Munoz, based on his training and experience, recognized as methamphetamine; and

    iii. A small, clear plastic bag containing a substance that Officer Munoz, based on his training and experience, recognized as heroin.

   i. Additionally, officers found three digital scales in the apartment, each with an off-white residue on the scale plate. Based on the officers' training and experience, the officers knew that drug distributors use digital scales to weigh and measure drugs for sale.

   j. In the kitchen, Detective Fleming found a 2000-milliliter glass Pyrex container with a dried, off-white residue inside of the container. Based on his training and experience, Detective Fleming knew that Pyrex dishes are commonly used to heat cocaine in the process of turning cocaine into cocaine base.

   k. Officer Braun found multiple bundles of money in a nightstand next to FLEMING's bed and an additional bundle of U.S. currency in the pocket of a brown jacket in the apartment. In total, Officer Braun found approximately $6,199 in the apartment.

   l. Based on Officer Braun's training and experience, the quantity of cocaine base found in FLEMING's apartment exceeded a quantity used for personal use. Additionally, based on the large quantity of cash and the Pyrex container found in FLEMING's apartment, Officer Braun believed that FLEMING was

6

creating cocaine base in his apartment and selling the cocaine to others.

## LABORATORY ANALYSIS

m. A LAPD Laboratory test confirmed that the plastic bags found in FLEMING's apartment contained 114.98 grams of a mixture or substance containing cocaine base and a second plastic bag contained an additional .14 grams of a mixture or substance containing cocaine base.

## V. CONCLUSION

9. For all the reasons described above, there is probable cause to believe that SAM TRULY FLEMING violated Title 21, United States Code, Section 841(a)(1), (b)(1)(B)(iii), possession with the intent to distribute a mixture or substance containing a detectable amount of cocaine base.

Miguel Mejia, Task Force Officer
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Subscribed to and sworn before me this ___ day of May 2017.

UNITED STATES MAGISTRATE JUDGE

7